UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YUSOFF U. ALLIAN, MARYBETH SAUER, and JONAS ALLIAN, | ) ) ) | |
| | ) | 18 C 3825 |
| Plaintiffs, | ) | |
| | ) | Judge Gary Feinerman |
| vs. | ) | |
| | ) | |
| JEAN ALLIAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Yusoff U. Allian, Marybeth Sauer, and Jonas Allian bring this diversity suit against their stepmother, Jean Allian, alleging intentional interference with testamentary expectancy and breach of fiduciary duty in connection with the will and trust of their father, Yusooff T. Allian ("Decedent"). Doc. 1. Jean moves under Civil Rule 12(b)(6) to dismiss on claim preclusion and other grounds, Doc. 17, and asks in the alternative for abstention under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending the closing of Decedent's estate in state probate court, Doc. 25. The motion to dismiss is granted.

## Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013)

(internal quotation marks omitted).  The facts are set forth as favorably to Plaintiffs as those materials allow.  *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).  In setting forth those facts at the pleading stage, the court does not vouch for their accuracy.  *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Plaintiffs are Decedent's children.  Doc. 1 at ¶ 5.  Given their close and loving relationship with Decedent, Plaintiffs expected that they would receive his assets upon his death as his beneficiaries, legatees, and heirs.  *Id*. at ¶¶ 9, 12.

In April 2004, Decedent suffered a stroke, which severely impaired his cognitive abilities and left him unable to manage his financial affairs.  *Id*. at ¶¶ 6, 10.  Shortly thereafter, Decedent married Jean, who proceeded to make him "extremely reliant on her."  *Id*. at ¶¶ 7, 10.  According to Plaintiffs, Jean "caus[ed], forc[ed] and direct[ed]" Decedent through "fraud, duress, and/or undue influence" to change his estate plan, including "the beneficiary designations on his various accounts and life insurance policies," "the manner in which his properties were owned," and "the terms of his estate planning documents."  *Id*. at ¶ 10.  These changes gave Jean beneficial interests in Decedent's assets while eliminating Plaintiffs' beneficial interests.  *Ibid*.

Decedent died in March 2014.  *Id*. at ¶ 5.  At that time, he owned assets worth more than $3 million, including real and personal property, bank accounts, investment accounts, and retirement accounts.  *Id*. at ¶ 8.  According to Plaintiffs, Decedent's assets would have passed to them had Jean not interfered with his original estate plan.  *Id*. at ¶¶ 12-13.  Instead, Jean received the assets.  *Id*. at ¶ 13.

Decedent's estate planning documents included an August 2004 will, for which Jean was the executor, and an August 2004 trust, for which she was the trustee.  *Id*. at ¶ 15; Doc. 17-1 at 15-37, 40-49.  Plaintiffs allege that Jean owed them fiduciary duties in her capacities as executor

and trustee because they were contingent legatees of the will and contingent beneficiaries of the trust. Doc. 1 at ¶ 15. Plaintiffs further allege that Jean breached those duties "by failing to maintain and provide an accounting to [them]" regarding the property she received in those roles. *Id*. at ¶ 19. Plaintiffs also allege that Jean breached her fiduciary duties by "expending, transferring, and selling" Decedent's assets despite knowing that she had interfered with Plaintiffs' testamentary expectancies. *Ibid*.

After Decedent died, a probate estate was opened in the Circuit Court for the Nineteenth Judicial Circuit in Lake County, Illinois. *In re Estate of Yusooff T. Allian*, No. 14 P 686 (Cir. Ct. Lake Cnty., Ill.); Doc. 17-1 at 2; Doc. 25-1 at 2. In November 2014, the state court admitted Decedent's August 2004 will to probate and appointed Jean as executor. Doc. 17-1 at 2.

In July 2014, Plaintiffs filed a petition in the probate case seeking to invalidate, on incapacity and undue influence grounds, Decedent's August 2004 will and trust and a March 2005 deed conveying a parcel of real estate in Florida to the trust. *Id*. at pp. 5-11. Plaintiffs alleged that the cognitive impairments resulting from Decedent's stroke left him "of unsound mind and memory and without power to devise or bequeath" his property at the time he executed the will, trust, and deed. *Id*. at p. 9. Plaintiffs further alleged that Decedent relied on Jean to handle "all of his personal, legal and financial affairs," and that she then exercised undue influence over him, causing him to give his entire estate to her by way of the will, trust, and deed. *Id*. at pp. 9-10, ¶¶ 19-23.

In June 2016, as part of their will and trust contest, Plaintiffs moved for a temporary restraining order and preliminary injunction prohibiting Jean from disbursing the trust's assets, requiring her to disclose the trust's assets and records, and compelling her "to file an inventory and accounting" of all assets transferred by the trust and Decedent's estate. *Id*. at pp. 162, 175-

176.  In September 2016, the state court denied the motion, holding that Plaintiffs were not entitled to injunctive relief because they failed to prove that they lacked an adequate remedy at law and that they would suffer irreparable harm without an injunction.  Doc. 29-1 at 2.  The court also denied Plaintiffs' request for an accounting, without prejudice to a renewed request if Plaintiffs met their burden of proof "in the underlying case."  *Ibid*.  In June 2017, Plaintiffs again moved for a temporary restraining order and preliminary injunction.  Doc. 17-1 at p. 218; Doc. 29 at 2.  The state court denied the motion in November 2017.  Doc. 17-1 at p. 218.

Meanwhile, in July 2017, Plaintiffs filed in the probate case a "Petition to Invalidate Beneficiary Designations and Citation to Recover Assets."  *Id*. at p. 221.  The petition alleged that Decedent "owned various retirement, investment and other financial accounts" for which he had designated beneficiaries in the event of his death, and further alleged that the designations were changed after his stroke to make Jean the primary beneficiary.  *Id*. at pp. 221-222, ¶¶ 2-4.  Plaintiffs argued that the changed beneficiary designations were "will substitutes that are subject to being set aside on the same bases as [Decedent's] will and … trust," namely, Decedent's incapacity and Jean's undue influence.  *Id*. at p. 222, ¶¶ 7-8.  The petition sought an order (1) setting aside all beneficiary designations executed after Decedent's stroke that named Jean as beneficiary and (2) requiring Jean to return any assets she received as a result of the disputed designations.  *Id*. at pp. 223, 225.

On November 29, 2017, the state court dismissed the petition to invalidate the beneficiary designations as untimely and for failure to state a claim, and it struck the request for a citation to recover assets.  *Id*. at p. 228.  The court denied Plaintiffs' motion for reconsideration on March 7, 2018.  *Id*. at p. 231, ¶ 1.  No appeal was taken from either order.

On May 2, 2018—five days before trial on Plaintiffs' petition to invalidate Decedent's August 2004 will and trust—the state court granted Plaintiffs' motion to voluntarily dismiss the petition without prejudice. *Id*. at p. 235, ¶¶ 1-2. After Jean indicated that she did not intend to file a motion to recover her expenses, the court made Plaintiffs' voluntary dismissal effective on June 19, 2018. *Id*. at p. 238, ¶ 1.

Plaintiffs filed this federal suit on May 31, 2018. Doc. 1. They seek compensatory and punitive damages from Jean personally for her alleged intentional interference with their testamentary expectancies and alleged breaches of her fiduciary duties. *Id*. at pp. 3, 5. At argument on Jean's motion to dismiss, the parties represented that Decedent's probate estate remains open for administrative matters and to await the disposition of this suit. Doc. 37.

## Discussion

### I. Subject Matter Jurisdiction

#### A. The Probate Exception to Federal Jurisdiction

Before addressing the merits, the court must consider Jean's challenge to subject matter jurisdiction. *See Clean Water Action Council of Ne. Wis., Inc. v. U.S. EPA*, 765 F.3d 749, 751 (7th Cir. 2014) ("Jurisdiction comes first."). Plaintiffs and Jean have diverse citizenship and the amount in controversy exceeds $75,000, so this case falls within the diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Jean suggests, however, that subject matter jurisdiction is ousted by the probate exception to federal jurisdiction. Doc. 25 at 9. Jean is incorrect.

As the Supreme Court explained in *Marshall v. Marshall*, 547 U.S. 293 (2006), the probate exception applies in two situations. First, the exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate." *Id*. at 311. Second, in line with "the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*," the exception

"precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court"—that is, from "disturbing or affecting the possession of property in the custody of a state court." *Id*. at 311-12 (alterations and internal quotation marks omitted). The exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id*. at 312; *see also Sykes v. Cook Cnty. Circuit Ct. Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016) ("[A]s a judicially created exception to the statutory grant of diversity jurisdiction, the probate exception should be narrowly construed.").

Plaintiffs' intentional interference with testamentary expectancy and breach of fiduciary duty claims are both *in personam* claims against Jean, seeking only compensatory and punitive damages from her personally. Doc. 1 at pp. 3, 5; *see Bjork v. O'Meara*, 986 N.E.2d 626, 631 (Ill. 2013) (explaining that under Illinois law, "a tort action for intentional interference with a testamentary expectancy" is "a personal action directed at an individual tortfeasor" for which the remedy "is not the setting aside of the will, but a judgment against the individual defendant"). Because neither claim requires the court to probate a will, administer an estate, or dispose of property in the state court's custody, the probate exception does not apply. *See Marshall*, 547 U.S. at 311, 313-14 (holding that the exception did not apply to "a state-law tort action for interference with an expected inheritance or gift," and suggesting that a fiduciary duty claim against an executor or trustee would be "well beyond" the exception); *Jones v. Brennan*, 465 F.3d 304, 307-08 (7th Cir. 2006) ("[The plaintiff] is … accusing the guardians of having mismanaged the estate, and as an heir she may have a claim for breach of fiduciary duty by them. Such a claim does not ask the court in which it is filed to administer the estate, but rather to impose tort liability on the guardians for breach of fiduciary duty.") (citation omitted); *Stiles v. Whalen*, 2013 WL 6730797, at *4 (N.D. Ill. Dec. 20, 2013) (holding that the probate exception

6

did not apply to *in personam* claims against the trustee alleging breach of fiduciary duty and

"seeking only an accounting and damages from [the trustee] personally"); *Downey v. Keltz*, 2012

WL 280716, at *2 (N.D. Ill. Jan. 31, 2012) ("[A]n *in rem* action in federal court involving the

same *res* that a state court is exercising jurisdiction over is inappropriate, but an *in personam*

action in federal court related to the state action may proceed.") (internal quotation marks

omitted).

### B. *Colorado River* Abstention

If *Colorado River* abstention were "jurisdictional," it would be a threshold issue that the

court would have to address before reaching the merits. *See Clean Water Action Council*, 765

F.3d at 751. But *Colorado River* abstention is prudential, not jurisdictional, as it merely "allows

courts to conserve judicial resources by abstaining from accepting jurisdiction when there is a

parallel proceeding elsewhere." *Baek v. Clausen*, 886 F.3d 652, 663 (7th Cir. 2018) (internal

quotation marks omitted); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

1, 25-26 (1983) ("[O]ur task in [determining whether to abstain under *Colorado River*] is not to

find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather,

the task is to ascertain whether there exist exceptional circumstances, the clearest of

justifications, that can suffice … to justify the *surrender* of that jurisdiction.") (internal quotation

marks omitted); *Colorado River*, 424 U.S. at 817-18 (describing the doctrine as an exception to

"the virtually unflagging obligation of the federal courts to exercise *the jurisdiction given them*,"

and requiring the court to consider "the order in which *jurisdiction was obtained* by the

concurrent forums") (emphasis added); *Thomas-Wise v. Nat'l City Mortg. Co.*, 2015 WL

641770, at *2 (N.D. Ill. Feb. 13, 2015) (collecting additional sources). Moreover, it follows

from the Seventh Circuit's suggestion that a party may "waive[]" *Colorado River* abstention,

*Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996), that the doctrine is not jurisdictional,

for the lack of subject matter jurisdiction cannot be waived. *See Boley v. Colvin*, 761 F.3d 803, 806 (7th Cir. 2014) (holding that a "jurisdictional" requirement "cannot be waived by the parties"). Accordingly, the court will exercise its discretion to look past Jean's *Colorado River* argument and proceed directly to the merits.

## II.     Merits

Jean contends, among other things, that Plaintiffs' claims in this suit are precluded by the state probate court's November 29, 2017 order dismissing their petition to invalidate the beneficiary designations, an order from which they did not appeal. Doc. 17 at 12-13. The preclusive effect of that order is governed by Illinois law. *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996); *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006). One form of preclusion, claim preclusion or res judicata, "provides for the finality of rulings by barring the relitigation of claims or defenses that had been or could have been brought in a prior case." *Smith Tr. & Sav. Bank v. Young*, 727 N.E.2d 1042, 1045 (Ill. App. 2000); *see also Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007); *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 975 (Ill. 2012).

Claim preclusion applies under Illinois law if: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Baek*, 886 F.3d at 660 (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998)). In addition, the party against whom claim preclusion is invoked must have had a "full and fair" opportunity to litigate its claims in the prior suit. *Hicks*, 479 F.3d at 471. The state court's order dismissing Plaintiffs' petition to invalidate the beneficiary designations satisfies this standard and therefore precludes their federal suit.

## A.     Final Judgment on the Merits

An order is final for purposes of Illinois preclusion law if it "either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof." *Wilson*, 981 N.E.2d at 978. That an order resolves a "separate branch" of a suit, however, does not necessarily mean that it is immediately entitled to preclusive effect. Instead, to qualify as final for preclusion purposes, such an order must be "final *and* appealable." *In re Estate of Cochrane*, 391 N.E.2d 35, 36 (Ill. App. 1979) (emphasis added).

The "final and appealable" standard governing claim preclusion under Illinois law is akin to the standard governing whether an appellate court has jurisdiction to review a trial court's order. *See Curtis v. Lofy*, 914 N.E.2d 248, 261 (Ill. App. 2009) ("This court disagrees that finality in the context of Rule 304(a)"—which permits a party to immediately appeal a final order regarding "fewer than all of the parties or claims" if the trial court makes an "express written finding that there is no just reason for delaying either enforcement or appeal," Ill. Sup. Ct. R. 304(a)—"and *res judicata* differs. An examination of finality in the context of Rule 304(a) is the same as any other analysis of whether an order is final or nonfinal."). Indeed, Illinois courts generally treat as interchangeable finality for appeal purposes and finality for preclusion purposes. *See Wilson*, 981 N.E.2d at 978 (applying precedents addressing whether a trial court order is final for appeal purposes in assessing whether a summary judgment order "was a final judgment on the merits for purposes of *res judicata*"); *Piagentini v. Ford Motor Co.*, 901 N.E.2d 986, 993 (Ill. App. 2009) (same).

The question here, then, is whether the state probate court's dismissal of Plaintiffs' petition to invalidate the beneficiary designations is a "final and appealable" order for appeal purposes; if it is, then it also is final for preclusion purposes. Jean argues that the order

9

dismissing Plaintiffs' petition and the order denying reconsideration of the dismissal order were final and appealable under Illinois Supreme Court Rule 304(b)(1). Doc. 17 at 13-14. Plaintiffs respond that the dismissal was not a final judgment on the merits because it was on statute of limitations grounds, but they cite no authority for their position, Doc. 29 at 7-8, thus forfeiting the issue. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Even setting aside forfeiture, Plaintiffs are wrong and Jean is right. Rule 304(b)(1) provides that a "judgment or order entered in the administration of an estate … which finally determines a right or status of a party" is immediately appealable without a special finding by the court. Ill. Sup. Ct. R. 304(b)(1); *see Hines v. Dep't of Pub. Aid*, 850 N.E.2d 148, 151 n.2 (Ill. 2006) (holding that Rule 304(b)(1) authorized an immediate appeal from the probate court's order allowing a claim against the estate). As the Appellate Court of Illinois has explained, the rule advances the interests of efficiency and finality in probate matters:

> Orders within the scope of Rule 304(b)(1) … must be appealed within 30 days of entry or be barred. A central reason behind making the time for appeal of such orders mandatory … is that certainty as to some issues is a necessity during the lengthy procedure of estate administration. Without the Rule 304(b)(1) exception, an appeal would have to be brought after an estate was closed, the result of which might require reopening the estate and marshaling assets that have already been distributed. That result would be both impractical and inefficient.

*Stephen v. Huckaba*, 838 N.E.2d 347, 352 (Ill. App. 2005) (citations and internal quotation marks omitted).

An order "finally determines a right or status of a party" within the meaning of Rule 304(b)(1) when it "resolve[s] all matters on [a] particular issue," even if it does not "resolve all matters in the estate." *Ibid*. The state probate court's November 29, 2017 order dismissing

Plaintiffs' petition to invalidate the beneficiary designations was such an order. By dismissing Plaintiffs' petition as untimely and for failing to allege sufficient facts to state a claim, Doc. 17-1 at p. 228, the state court finally determined Plaintiffs' right to challenge the beneficiary designations. *See In re Estate of Yucis*, 890 N.E.2d 964, 970-72 (Ill. App. 2008) (holding that the probate court's order directing the sheriff to sell a party's personal property was final and appealable under Rule 304(b)(1) because it "finally determined [that party's] right to her personal possessions," as compared to an order that "did not finally determine her rights" to a house because "it left open that [she] might seek to block the sale by other means"); *Stephen*, 838 N.E.2d at 352-53 (holding that the probate court's order denying a party's "petition asking that he be ordered to complete [a] real estate purchase contract" was appealable under Rule 304(b)(1) because it "disposed of the entire controversy" regarding whether the sale should go forward according to the contract); *In re Estate of Burd*, 820 N.E.2d 613, 616 (Ill. App. 2004) (holding that Rule 304(b)(1) applied to a probate court order appointing or removing an executor); *In re Estate of Mueller*, 655 N.E.2d 1040, 1047-48 (Ill. App. 1995) (holding that an order denying a petition to intervene in probate proceedings was appealable under Rule 304(b)(1) because it "finally determine[d] [the petitioner's] right to participate in the estate proceedings"); *In re Estate of Kime*, 419 N.E.2d 1246, 1250-51 (Ill. App. 1981) (holding that Rule 304(b)(1) applied to an order denying a petition for fees and costs and an order "determin[ing] that [the petitioner] had no right to have [the executor's attorney] removed … because of his alleged conflict of interest").

Accordingly, even though Decedent's probate estate remains open, the November 29, 2017 order dismissing Plaintiffs' petition to invalidate the beneficiary designations is final for appeal purposes under Rule 304(b)(1). And because that order is final for appeal purposes, it

also is a final judgment for claim preclusion purposes. *See Kanfer v. Busey Tr. Co.*, 1 N.E.3d 61, 74 (Ill. App. 2013) ("The orders granting management fees were orders described in Rule 304(b)(1) and hence were final judgments for purposes of *res judicata*."). Contrary to Plaintiffs' contention, Doc. 29 at 7-8, the fact that the state court dismissed their petition in part on statute of limitations grounds does not compel the opposite result. As the Supreme Court of Illinois has held, an order granting a motion to dismiss "based on the applicable statute of limitations is a final adjudication on the merits" for claim preclusion purposes. *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1204-05 (Ill. 1996).

One loose end before moving on. It is unclear under Illinois law whether an order can be final for preclusion purposes if the order is on appeal or remains subject to appellate review. *See Michael v. Letchinger*, 2011 WL 3471082, at *9 (N.D. Ill. Aug. 5, 2011) (collecting cases); *see also Baek*, 886 F.3d at 659, 664-65 (noting that the question remains unresolved); *Mandelstein v. Rukin*, 2018 WL 4384383, at *4-5 (N.D. Ill. Sept. 14, 2018) (same). There is no need to address that question here. As an initial matter, Plaintiffs do not contend that the state court orders are not final because they remain open to appellate review, thereby forfeiting the issue. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss … ."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."). Second, Plaintiffs did not appeal the order dismissing their petition to invalidate the beneficiary designations or the order denying reconsideration of the dismissal, and the time for such an appeal has passed, so those orders in fact are not on appeal and do not remain open to appellate review. *See Houghtaylen v. Russell D. Houghtaylen By-Pass Tr.*, 95 N.E.3d 1253, 1257 (Ill. App. 2017) (holding that a

judgment or order made appealable by Rule 304(b)(1) "*must* be appealed within 30 days, or within 30 days after the entry of the order disposing of the last pending motion directed against that judgment"); *Stephen*, 838 N.E.2d at 352 ("Orders within the scope of Rule 304(b)(1) … must be appealed within 30 days of entry or be barred."); *see also* Ill. Sup. Ct. R. 304(b) ("The time in which a notice of appeal may be filed from a judgment or order appealable under this Rule 304(b) shall be as provided in Rule 303."); Ill. Sup. Ct. R. 303(a)(1) ("The notice of appeal must be filed … within 30 days after the entry of the final judgment appealed from, or … within 30 days after the order disposing of the last pending postjudgment motion directed against that judgment or order … .").

### B. Identity of Causes of Action

To determine whether there is an identity of the causes of action between two cases, Illinois courts apply a "transactional test," under which "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 703 N.E.2d at 893; *see also Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 558-59 (7th Cir. 2014) ("[A] final judgment bars a plaintiff's claim to all or any part of a transaction or series of connected transactions from which the action arose.") (internal quotation marks omitted). "Illinois does not require the same evidence or an identical theory of relief." *Cooney v. Rossiter*, 986 N.E.2d 618, 622 (Ill. 2012); *see also Vill. of Bartonville v. Lopez*, 77 N.E.3d 639, 650 (Ill. 2017) (noting that the transactional test does not require the same "kind[] of relief"). Rather, what constitutes a "single group of operative facts" is "determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *River Park*, 703 N.E.2d at 893 (internal

quotation marks omitted); *see also Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 637-39 (7th Cir. 2004) ("[T]his approach views claims in factual terms, focusing only on the bounds of the transaction at issue, disregarding the number of substantive theories, the variant forms of relief flowing from those theories, and the variations in evidence needed to support the theories.").

Plaintiffs' claims here arise from the same group of operative facts as did their state court petition to challenge the beneficiary designations. Plaintiffs' state court petition told essentially the same story set forth in their federal complaint: Decedent had a stroke in April 2004, Doc. 17-1 at p. 221, ¶ 3; the stroke left him without the legal capacity to "make changes to the designation of beneficial interests" on "various retirement, investment and other financial accounts," *id*. at pp. 222-223, ¶¶ 9-10; the stroke also led him to rely on Jean to handle his personal, legal, and financial affairs, *id*. at p. 224, ¶¶ 10-11; and Jean exercised undue influence over Decedent, causing him to designate her as the accounts' sole beneficiary, *id*. at pp. 224-225, ¶¶ 13-14. Based on those allegations, Plaintiffs sought from the state court an order (1) setting aside all beneficiary designations executed after the stroke and naming Jean as beneficiary, and (2) requiring the return of any assets Jean received from being named a beneficiary of the disputed accounts. *Id*. at pp. 223, 225. Although Plaintiffs' state court petition did not directly challenge Decedent's will and trust, it acknowledged that Plaintiffs' challenge to the beneficiary designations rested "on the same bases" as their separate petition challenging the will and trust. *Id*. at p. 222, ¶ 7.

To be sure, Plaintiffs' complaint here addresses not only the changed beneficiary designations at issue in their state court petition, but also changes to "the manner in which [Decedent's] properties were owned" and "the terms of his estate planning documents." Doc. 1 at ¶ 10. And Plaintiffs' complaint here, unlike their state court petition, alleges that Jean

breached the fiduciary duties she owed them as executor and trustee by failing to give them assets to which they would have been entitled but for her tortious interference and by failing to "maintain and provide an accounting" of Decedent's assets. *Id*. at ¶¶ 15-22. But the new ingredients tossed into the federal complaint arise from the same "series of connected transactions," *Huon*, 757 F.3d at 558 (internal quotation marks omitted), as the state court petition: Decedent had a stroke and lost "the cognitive ability to properly manage his financial affairs," and Jean took advantage of the situation to "assert[] … undue influence over the Decedent, causing, forcing and directing him to change the beneficiary designations on his various accounts and life insurance policies, change the manner in which his properties were owned, and change the terms of his estate planning documents, so as to eliminate the Plaintiff's [sic] beneficial interest in the Decedent's assets and to create beneficial interests for herself." Doc. 1 at ¶ 10; *see also id*. at ¶¶ 20-21 (alleging that Jean breached her fiduciary duties to Plaintiffs "by expending, transferring, and selling" Decedent's assets "despite the fact that [she] knew … that she had taken steps to interfere with the Plaintiffs' testamentary expectancies in [Decedent's] estate and trust").

Despite their superficial differences, the state court petition and this suit ultimately center on the same two questions. First, when Decedent changed his plans for disposing of his property upon his death—his will, trust, beneficiary designations, and real estate ownership arrangements—did he have the legal capacity to do so? Second, did Jean exercise undue influence over Decedent to bring about those changes? This congruence between the federal complaint and the state court petition satisfies the identity of the cause of action requirement. *See Huon*, 757 F.3d at 558-59 ("Huon's federal complaint adds allegations relating to salary and promotions that were not mentioned in his state complaint, but these additional allegations arise

out of the same facts underlying the state suit—his job conditions at Johnson & Bell and his discharge. … The district court correctly concluded that the facts in the two complaints describe a series of connected transactions that form a convenient trial unit … .") (internal quotation marks omitted); *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 821-22, 825 (Ill. 1992) (holding that an unjust enrichment suit and a petition filed in a probate matter seeking to recover property for the estate arose from the same group of operative facts because both actions involved whether the "monies used to form [the defendant entity] … constituted charitable assets"); *see also Baek*, 886 F.3d at 661 (holding that federal and state suits arose from the same group of operative facts where both "center[ed] on [the defendant's] administration of" a loan and where the state complaint's "allegations parallel[ed] directly those found in the" federal complaint); *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 454-56, 458 (7th Cir. 2017) (holding that an identity of the cause of action existed between (1) a state court defamation suit alleging that the defendant hospital's staff made false statements about the plaintiff to other hospitals from which he sought employment and (2) a federal suit alleging that hospital staff initiated a sham peer review process and declined to inform other hospitals that the plaintiff was an employee in good standing, reasoning that "[w]hile [the plaintiff's] theory of recovery is different here than in [the state court case], both suits arise out of statements made around the time he resigned that made it difficult for him to get another job"); *Dookeran v. Cnty. of Cook*, 987 N.E.2d 826, 829, 832-34 (Ill. App. 2013) (holding that two cases shared a single group of operative facts where the first sought administrative review of the denial of the plaintiff's reappointment to a hospital's medical staff and the second alleged retaliatory discharge and a false statement to the National Data Bank that the plaintiff's termination was based on unprofessional behavior); *Burgess v. Bd. of Educ. of Ottawa Twp. High Sch. Dist. 140*,

2017 WL 6570078, at *3 (N.D. Ill. Dec. 22, 2017) (holding that two suits arose from the same set of operative facts where both centered on the question whether the defendant's stated reasons for terminating the plaintiff's employment were "a pretext or subterfuge to cover up a retaliatory termination").

### C.      Identity of Parties and Full and Fair Opportunity to Litigate

Plaintiffs do not dispute that the other two requirements of claim preclusion—identity of parties, and a full and fair opportunity to litigate their claims in state court—are satisfied, thus forfeiting any such arguments. *See Firestone*, 796 F.3d at 825; *G & S Holdings*, 697 F.3d at 538. In any event, the identity of parties requirement is satisfied because this case involves precisely the same litigants as did Plaintiffs' state court challenge to the beneficiary designations. Doc. 17-1 at p. 221 (petition captioned as an adversarial proceeding between Plaintiffs and Jean); *id*. at p. 225 (petition identifying Plaintiffs as "Petitioners" and Jean as "Respondent"); *id*. at p. 228 (order granting Jean's motion to dismiss Plaintiffs' petition). And the full and fair opportunity requirement is satisfied because there is no apparent reason to doubt that "the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007); *see Rose v. Bd. of Election Comm'rs*, 815 F.3d 372, 376 (7th Cir. 2016) ("We have little trouble concluding that the state court proceedings to which Rose voluntarily submitted were constitutionally adequate. … There is no indication that the state court proceedings were insufficiently extensive or substantively unfair, and the mere fact that Rose was displeased with the outcome of those proceedings does not amount to a violation of due process.").

### Conclusion

Because Plaintiffs' claims are barred by claim preclusion, Jean's motion to dismiss is granted. The dismissal is with prejudice. *See Bernstein v. Bankert*, 733 F.3d 190, 224 (7th Cir.

2013) ("[A] dismissal on res judicata grounds … is a dismissal with prejudice.") (emphasis omitted).  In any event, Plaintiffs' opposition brief does not request a chance to replead in the event their complaint is dismissed, which provides a separate ground for entering a with-prejudice dismissal.  *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing … in any of our cases … suggests that a district court must give leave to amend a complaint where a party does not request it … .  To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request … .").

December 14, 2018

_____

United States District Judge